**FEDERAL MINING & SMELTING CO. et al. v. THOMAS et al.**

No. 14726—Opinion Filed Feb. 12, 1924.

Rehearing Denied April 22, 1924.

1. **Master and Servant—"Independent Contractor."**

An independent contractor is one who exercises an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer, except as to the results of the work.

2. **Same—Workmen's Compensation — Conclusiveness of Findings.**

The finding of facts by the Industrial Commission, where there is evidence reasonably tending to support it, is binding upon this court.

3. **Same—Question of Fact — Claimant's Relation as Employe.**

Whether a workman is an employe or an independent contractor is a question of fact upon which the judgment of the Industrial Commission is conclusive, where the facts are in dispute. It only becomes a question of law when no other inference can reasonably be drawn from the facts that the workman was an independent contractor. The decision of the commission that the workman is an employe and not an independent contractor is conclusive where the facts are in dispute.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from State Industrial Commission.

Proceeding by W. M. Thomas before the State Industrial Commission to recover compensation for injuries alleged to have been sustained while in the employ of Federal Mining & Smelting Company. From a judgment of the commission awarding respondent compensation, petitioners appeal. Affirmed.

Lydick & Wilson and Con Murphy, Jr., for petitioners.

Geo. F. Short, Atty. Gen., Baxter Taylor, Asst. Atty. Gen., M. W. Hinch, and Clyde Morsey, for respondents.

Opinion by JONES, C. This cause comes here on petition for review of the question in controversy from the State Industrial Commission wherein W. M. Thomas, claimant, was awarded compensation by said commission at the rate of $17.31 per week for a period of 250 weeks for an injury received by claimant which necessitated the amputation of his arm. The injury was received by the said Thomas while operating a drilling rig, which belonged to the claimant, and he was operating same under a contract with the petitioner herein, Federal Mining & Smelting company, wherein he had been employed by said company to drill test holes on certain mining property near Miami, in Ottawa county, Okla. The matter was tried before the Industrial Commission and complainant was awarded $17.31 per week as aforesaid. The only question for our consideration as presented by the record before us is that of whether or not the said W. M. Thomas, complainant, was acting in the capacity of a servant or employe or that of an **independent** contractor. The Industrial Commission found that complainant was an employe of the Federal Mining & Smelting Company, and was engaged in a hazardous occupation within the meaning of the statutes, and while so occupied received the injuries complained of. The facts as disclosed by the record, show that Thomas, the claimant. was the owner of a drilling rig, which he operated himself and that the Mining & Smelting company entered into an oral agreement with him whereby they employed

him to drill test holes on the mining properties of the company. Thomas employed his own assistants in operating the rig and paid same; and under the terms of the agreement Thomas was to receive $1.10 per foot for drilling. At the time he received the injuries complained of he was drilling on the third hole. The agreement did not specify or exact that any hole was to be drilled to any particular depth, the number of holes, or the location of any hole. The mining company selected or pointed out the location and was in charge of the operation so far as the depth to be drilled, and made their own examination of cuttings produced by the drilling of ore or mineral through which it passed, and had the right to abandon drilling or work on a hole at any time, and to stop operations entirely at any time they might desire. The object of the work and operation being to test out the mining properties in said territory where the drilling was done. The record further discloses that while the agreement was that Thomas was to receive $1.10 per foot, and in fact was paid on that basis, the petitioner, the mining company, however filed a payroll with the Consolidated Underwriters, an insurance company, who are also named as petitioners, showing the name of the claimant herein, Thomas, as an employe of said company designated as a driller, drawing $6 per day, and the other parties who were employed to assist in the operation of the drilling rig were also listed as employes of the company at $4 per day. And as we understand the record the mining & smelting company carried insurance covering Thomas as an employe and deducted. $1.62 from every $100 paid the claimant, Thomas, with which to pay premium on his policy, and for that reason the Consolidated Underwriters are made parties to this proceeding. Both the petitioners herein, the mining company and the underwriters, complain of the award made and as heretofore stated base their contention solely on the fact that Thomas was an independent contractor and that the relation of employer and employe did not exist between the Federal Mining & Smelting company and the said W. M. Thomas, and for that reason the order of the Commission granting an award was and is erroneous and void.

As suggested by the Attorney General who appears for respondent herein, the question here presented is close and difficult of determination, and as said in the case of Jensen v. Barbour, 15 Mont. 589, 39 Pac. 908:

"To draw the distinction between inde-

pendent contractors and servants is often difficult and the rules which courts have undertaken to lay down on this subject are not always simple of application."

This court, in the case of Producers Lumber Co. v. Butler, 87 Okla. 172, 209 Pac. 738, announces the following rule:

"An independent contractor is one who exercises an independent employment, contracts to do a piece of work, according to his own methods, and without being subject to the control of his employer, except as to the results of the work."

For other definitions see Words and Phrases, volume 4, p. 3542. And the same rule is followed in the case of C. R. I. & P. Ry. v. Bennett, 36 Okla. 358, 128 Pac. 705. From an examination of the subject as given by the author of R. C. L., volume 14, we find many different principles enunciated which may be considered as test of whether a person is employed as an ordinary employe or servant, or as an independent contractor. Section 3, p. 67, volume 14, lays down one of the tests as being:

"Control of work as Test of Independence.—The vital test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer. Stated as a general proposition if the contract is under the control of the employer, he is a servant; of not under such control, he is an independent contractor."

"Section 5. Supervision of Work. — The mere fact that the employer reserves a right to supervise or inspect the work during its performance does not make the contractor a mere servant, where the mode and means of performance are within the control of such contractor. The right of the employer to go upon the premises and see that the work is being done according to the specifications of the contract, does not affect the relations of the parties so as to constitute the employe a mere servant. If the contract provides. that the work shall be done under the direction and subject to the approval of the employer, a closer question is presented, but the predominant view is that the question is to be determined from all the provisions of the contract together with the surrounding circumstances and that such a provision does not necessarily make the employe a mere servant."

"Section 6. Control of Premises.—Whether the employer or employe has control of the premises where work is to be done, while regarded as an important circumstance, is not an absolute test to determine whether the employe is or is not an independent contractor."

"Sec. 8. Control of Workmen.—The con-

trol of the workmen doing the actual manual labor in the performance of the work is an extremely important element in determining whether the employe is an independent contractor. The fact that the contractor employs, pays, and has full power to control the workmen is practically decisive of his independence."

"Sec. 9. Power to Terminate Contract.— The power of an employer to terminate the employment at any time is incompatible with the full control of the work which is usually enjoyed by an independent contractor, and hence is considered as a strong circumstance tending to show the subserviency· of the employe. Indeed, it has been said that no single fact is more conclusive perhaps, than the unrestricted right of the employer to end the particular service whenever he chooses, without regard to the final result of the work itself."

"Sec. 10. Furnishing Workmen or Appliances.—In determining the independence of a contractor, whether he or the master furnishes the workmen and appliances is a matter worthy of some consideration, since, as a general rule, independent contractors, furnish the means for the doing of the work; and mere servants generally use the means afforded by the master. But whether a contractor furnishes or does not furnish the workman and appliances by which certain work is done is not in itself decisive on the question of his independence."

"Sec. 11. Mode and Time of Payment.— The mode of payment for the work to be done is an important element to be considered in determining whether the employe is an independent contractor, but it is not controlling."

And under these various heads many authorities are cited and numerous illustrations are given in an attempt to lay down and establish rules whereby we may distinguish between an employe or servant, and an independent contractor, but after all we are forced to the conclusion that each case must stand more or less on its own bottom, and employment being the result of contractual relations, either expressed or implied; 'he' fact is largely determined by the intention of the parties expressed in the contract and the nature of the services rendered.

And as stated in the case of Bodwell et al. v. Webster et al., 98 Neb. 664. 154 N. W. 229:

"It is the actual relations and not the form that controls."

In the Butler Case, supra, this court said:

"It has been repeatedly held that the finding of fact by the Industrial Commission, where there is evidence to support it is binding upon this court. * * * ."

And in Harper's Work on the Law of Workmen's Compensation (2nd Ed.) 1920. p. 201, the author says:

"Whether a workman is an employe or an independent contractor is a question of fact upon which a judgment of the Industrial Commission is conclusive, where the facts are in dispute. It only becomes a question of law when no other inference can reasonably be drawn from the facts that the workmen was an independent contractor. The decision of the commission that the workman is an employe and not an independent contractor is conclusive where the facts are in dispute."

"Where the evidence is conflicting on the question of whether an applicant for compensation was an employe, or an independent contractor at the time 'he was injured and there is evidence tending to show that the relationship of employer and employe exist, the finding by the Industrial Commission that the applicant is entitled to compensation as an employe is binding on the Supreme Court."

The following cases support this rule: Cinoffsky et al. v. Industrial Commission, 290, Ill. 521; see, also, Belmont v. Corner (Pa.), 106 Atl. 787. Citing further from R. C. L., volume 14, p 58, we find this language in the discussion of what constitutes an independent contractor:

"In this connection the ultimate question is not whether the employer actually exercised control of the doing of the work but it is whether he has the right to control"

—citing St. L. & S. F. Ry. Co. v. Madden, (Kan.) 93 Pac. 586, and the case of DePalma et al v. Weiman (N. M.) 103 Pac. 782. In the last named case we find the following statement in the 4th paragraph of the syllabus thereof:

"One contracting for a stipulated price to do certain excavation and stone work for a lot owner under the direction of the superintendent of the building, who is the owner's agent had full control authorizing the work, subject to plans and specifications, was the owner's servant, and not an independent contractor."

And in article 6, p. 70 R. C. I., volume 14, we find the following illustration:

"Thus if a telephone company undertakes to put a telephone in a house a workman employed by it to dig a post hole in the yard (for the purpose of erecting a telephone pole) is not to be considered as an independent contractor however he is paid a designated price for each hole he digs"

—citing the case of Reuhel v. Ligerwood, Rural Telephone Co., 23 N. D., p. 6. Both petitioners and respondents cite many other authorities ·bearing on the question and re-

spondents call special attention to the case of C., R. I. & P. Ry. Co. v. Bennett, supra, and quote at considerable length from said opinion, but as we view it it will add nothing to the opinion, and there is nothing to be gained by further discussion of authorities and citations of the same, but in view of the nature and character of the employment and services performed and the contract of employment being oral, we are not prepared to say that there is not sufficient evidence tending to support the award made by the commission, and it being a question of fact for their determination, we feel that under the authorities the award should not be disturbed by this court, and therefore recommend that the case be affirmed.

By the Court: It is so ordered.